**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | |
|---|---|
| Allergan, Inc. and AbbVie Inc.<br><br>*Plaintiffs*,<br><br>v.<br><br>Galderma Group AG, Galderma S.A., Galderma Laboratories, L.P., and Q-Med AB,<br><br>*Defendants*. | C.A. No. 26-cv-2420 |

**Plaintiffs' Opposition Brief to**
**Defendants' Rule 12(b)(6) Motion to Dismiss for Failure to State a Claim**

# TABLE OF CONTENTS

Page


I. INTRODUCTION ..... 1

II. FACTUAL BACKGROUND ..... 2

III. APPLICABLE LAW ..... 5

A. Rule 12(b)(6) Motions to Dismiss ..... 5

B. Design Patents ..... 6

IV. ARGUMENT ..... 7

A. Allergan's Complaint Is More Than Sufficient to Plausibly State a Claim for Infringement of the Asserted Design Patents ..... 8

1. Independent Basis #1: Allergan Indisputably Pled the Five Elements of a Design Patent Infringement Claim ..... 8

2. Independent Basis #2: Galderma Improperly Seeks to Litigate Stringent "Functionality" Merits on the Pleadings ..... 10

3. Independent Basis #3: Galderma's Demand for an Ornamental Feature Explanation Is Contrary to Federal Circuit Precedent ..... 12

4. Independent Basis #4: Galderma Relies on Extrinsic Evidence ..... 14

5. Independent Basis #5: Galderma Falsely Accuses Allergan of Modifying a Restylane® Product Image ..... 17

B. Each of Galderma's Cited Rule 12(b)(6) Cases Is Inapposite and the Law Does Not Support Galderma's Assertion that Design Patent Infringement Complaints Are "Routinely" Dismissed ..... 19

C. Galderma's Alleged "Striking Differences" Between the Patented and Accused Designs Reveal Core Factual Disputes Not Appropriate for a Motion to Dismiss ..... 22

D. Galderma's Reliance on Its Later-Filed Design Patent Is Irrelevant ..... 23

V. AT A MINIMUM, ALLERGAN SHOULD BE GRANTED LEAVE TO AMEND ..... 24

VI. CONCLUSION ..... 25

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Anderson v. Kimberly-Clark Corp.*,
570 F. App'x 927 (Fed. Cir. 2014) ....14, 19, 20

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....5

*Atlas Powder Co. v. E.I. du Pont De Nemours & Co.*,
750 F.2d 1569 (Fed. Cir. 1984)....24

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)....5

*Bio-Technology General Corp. v. Genentech, Inc.*,
80 F.3d 1553 (Fed. Cir. 1996)....24

*Cloud Sys. Holdco IP, LLC v. RGB Sys., Inc.*,
2026 WL 2906381 (N.D. Tex. Sept. 28, 2026) (Scholer, J.) ....5, 12

*Colida v. Nokia, Inc*,
347 F. App'x 568, 571 (Fed. Cir. 2009)....19

*Collins v. Morgan Stanley Dean Witter*,
224 F.3d 496 (5th Cir. 2000) ....5, 14

*Columbia Sportswear N. Am., Inc. v. Seirus Innovative Accessories, Inc.*,
942 F.3d 1119 (Fed. Cir. 2019)....6, 23

*Constructive Eating, Inc. v. Masontops, Inc.*,
2021 WL 719701 (E.D. Mich. Feb. 23, 2021).... 20-21

*Contessa Food Prods., Inc. v. Conagra, Inc.*,
282 F.3d 1370 (Fed. Cir. 2002)....24

*Converse Inc. v. Steve Madden, Ltd.*,
552 F. Supp. 3d 139 (D. Mass. 2021) ....7

*Crocs, Inc. v. Int'l Trade Comm'n*,
598 F.3d 1294 (Fed. Cir. 2010)....6, 10

*Design Ideas, Ltd. v. Lowe's Home Ctrs. LLC*,
2021 WL 5611319 (C.D. Ill. Nov. 30, 2021)....17

*Egyptian Goddess, Inc. v. Swisa, Inc.*,
543 F.3d 665 (Fed. Cir. 2008)....6

*Espinoza v. Garza*,
2020 WL 2310022 (S.D. Tex. Apr. 6, 2020)....18

*Ethicon Endo-Surgery, Inc. v. Covidien, Inc.*,
796 F.3d 1312 (Fed. Cir. 2015)....7, 11, 16, 17

*Fecon, Inc. v. King Kong Tools, LLC*,
2017 WL 4869000 (S.D. Ohio June 27, 2017)....11

*Flipsi, Ltd. v. Tomy Int'l, Inc.*,
2023 WL 4930350 (N.D. Ill. Aug. 2, 2023)....12, 21

*Gaiatop LLC v. Shenzhen Jisu Keji Youxiangongsi*,
2025 WL 2412717 (D.N.J. Aug. 20, 2025)....23

*Gines v. D.R. Horton, Inc.*,
699 F.3d 812 (5th Cir. 2012)....5

*Hall v. Bed Bath & Beyond, Inc.*,
705 F.3d 1357 (Fed. Cir. 2013)....1, 7, 8, 9, 12, 15

*Hung v. Lowe's Home Ctrs.*,
2019 WL 4149361 (C.D. Cal. May 1, 2019)....25

*Intamin Ltd. v. Magnetar Techs., Corp.*,
483 F.3d 1328 (Fed. Cir. 2007)....15

*Jenny Yoo Collection, Inc. v. Watters Designs, Inc.*,
2018 WL 3330025 (N.D. Tex. June 6, 2018)....7, 8, 12, 13

*Kao v. Hengda Kite*,
2026 WL 1475186 (N.D. Ill. May 26, 2026)....21

*In re Katrina Canal Breaches Litig.*,
495 F.3d 191 (5th Cir. 2007)....14, 16, 17

*Magnolia & Vine Inc. v. Tapestry, Inc.*,
2018 WL 2208316 (D. Minn. May 14, 2018)....17, 21

*Midwest Goods Inc. v. Breeze Smoke LLC*,
2024 WL 2785066 (N.D. Ill. May 30, 2024)....21

*Mobile Pixels, Inc. v. P'ships & Unincorporated Assocs. Identified on Schedule "A"*,
2024 WL 3461402 (D. Mass. July 24, 2024)....7, 21

*Nalco Co. v. Chem-Mod, LLC*,
883 F.3d 1337 (Fed. Cir. 2018)....................11

*Peña v. City of Rio Grande City*,
879 F.3d 613 (5th Cir. 2018) .................... 24-25

*Performance Designed Prods., LLC v. Mad Catz, Inc.*,
2016 WL 3552063 (S.D. Cal. June 29, 2016)....................20

*PHG Techs., LLC v. St. John Cos., Inc.*,
469 F.3d 1361 (Fed. Cir. 2006)....................7, 11, 16

*Pickuls Gizmo Ltd. v. P'ships & Unincorporated Assocs. Identified in Schedule "A"*,
2026 WL 926401 (N.D. Ill. Apr. 6, 2026) ....................21

*Prestige Flag Mfg. Co. Inc. v. Golf Sol. I, LLC*,
2018 WL 9651792 (W.D. Wis. June 28, 2018) ....................7

*Range of Motion Prods., LLC v. Armaid Co. Inc.*,
166 F.4th 981 (Fed. Cir. 2026) ....................6

*Rosco, Inc. v. Mirror Lite Co.*,
304 F.3d 1373 (Fed. Cir. 2002)....................7

*Samsung Elecs. Co., Ltd. v. Apple Inc.*,
580 U.S. 53 (2016)....................6

*Simplehuman LLC v. iTouchless Housewares & Prods., Inc.*,
2019 WL 5963245 (N.D. Cal. Nov. 13, 2019) ....................15, 22

*Shenzhen Jisu Tech. Co. v. Entities & Individuals Identified in Annex A*,
2026 WL 2108668 (Fed. Cir. 2026)....................23

*Viscosoft, Inc. v. Hangzhou Heliang Network Tech. Co.*,
2026 WL 510573 (W.D.N.C. Feb. 24, 2026) ....................20

*Wepay Glob. Payments, LLC v. PNC Bank N.A.*,
2022 WL 1782504 (W.D. Pa. June 1, 2022)....................20

*Wine Enthusiast, Inc. v. Vinotemp Int'l Corp.*,
317 F. Supp. 3d 795 (S.D.N.Y. 2018)....................20

**Statutes**

35 U.S.C. § 171(a) ....................6

35 U.S.C. § 289....................6, 9

**Other Authorities**

Fed. R. Civ. P. 8(a)(2) .......... 1, 5, 8

Fed. R. Civ. P. 12(b)(6) .......... *passim*

Fed. R. Civ. P. 15(a)(2) .......... 25

# I. INTRODUCTION

For years, Galderma[1] sold its Restylane® dermal filler in a no-frills syringe that looked nothing like the one used in Allergan's market-leading Juvéderm® product. (D.I. 1 at ¶¶ 4, 54.) Galderma then made a calculated decision: Well after Allergan[2] launched its novel, next-generation Juvéderm® syringe, Galderma dropped its earlier design in favor of a "new state-of-the-art Restylane® syringe" that copies five of AbbVie's design patents. (*Id.* at ¶¶ 5-6, 29-30, 56, 58-59.) Rather than innovate, Galderma chose to free-ride on Allergan's two decades of investment by using a syringe designed to blur the line between Allergan's products and its own. (*Id.* at ¶¶ 1, 6, 56-57.) And Galderma did so with full knowledge of Allergan's patents—a point that Galderma's motion to dismiss does not dispute. (*See also id.* at ¶ 58.)

Allergan responded with a detailed complaint alleging that Galderma has infringed and/or will infringe Allergan's design patents. (D.I. 1.) Seeking another shortcut, Galderma now asks the Court to decide the merits of fact-intensive disputes at the pleadings stage. But deciding these highly fact-specific issues on a Rule 12(b)(6) motion—where all allegations in the complaint must be accepted as true—is not only improper, it would allow Galderma to continue its unauthorized copying of Allergan's novel designs.

Allergan's complaint is more than sufficient to meet Rule 8(a)(2). As outlined in the Federal Circuit's precedential *Hall v. Bed Bath & Beyond, Inc.* decision addressing design patent pleading standards, the complaint identifies Allergan as the owner of the patents, Galderma as the infringer, and the five asserted design patents. 705 F.3d 1357, 1362 (Fed. Cir. 2013). The complaint also (1) details how Galderma infringes the asserted design patents, including through

---

[1] Galderma Group AG, Galderma S.A., Galderma Laboratories, L.P., and Q-Med AB (collectively where applicable, "Defendants" or "Galderma").

[2] Allergan, Inc. and AbbVie Inc. (collectively where applicable, "Plaintiffs" or "Allergan").

one-to-one comparisons between the claimed designs and accused product, (2) contains specific allegations of infringing uses, including commercial stockpiling, sales, offers for sale, and importations, and (3) identifies the statutory remedies for these infringing activities.

Given the strength of Allergan's complaint, Galderma disregards the *Twombly/Iqbal* standard and resorts to arguments focused on the merits and disputed factual issues. Allergan respectfully submits that Galderma's motion should be denied.

## II. FACTUAL BACKGROUND

Allergan is a leader in aesthetic medicine. For decades, Allergan has set the industry standard, bringing to market a world-class portfolio of facial injectables, neurotoxins, skin care products, and related innovations that have transformed the field. (D.I. 1 at ¶ 1.) A pillar of Allergan's portfolio is the Juvéderm® Collection of Fillers, into which Allergan has poured millions of dollars over multiple decades and conducted more than 330 clinical studies. (*Id.* at ¶¶ 2, 23-26.) Allergan's investment in dermal filler treatments in particular has resulted in millions of patients treated and roughly $1 billion in worldwide Juvéderm® net revenues in 2025 alone. (*Id.* at ¶¶ 25-26.)

One aspect of Allergan's dermal filler market-leading innovation and investment concerns the distinct product designs covering the Juvéderm® syringe. After years of redesign work by a dedicated team of product designers, Allergan launched a next-generation syringe that was "a first-of-its-kind departure from the conventional, utilitarian syringe presentations that had long characterized the dermal filler industry." (*Id.* at ¶ 29.) Five design patents protect that design: D865,948 ("D948"), D865,949 ("D949"), D865,950 ("D950"), D866,753 ("D753"), and D867,582 ("D582") (collectively, the "Asserted Design Patents"). (*Id.* at ¶¶ 2, 33-52.) Injectors and patients recognize Juvéderm®'s distinctive, patented design on sight:




This design quickly became a visual hallmark of the Juvéderm® brand. (D.I. 1 at ¶ 31.) That matters in this market because injectors often choose fillers in part based on how the syringe looks. (*Id.* at ¶ 27.) Moreover, patients see the syringe during treatment and the syringe's design has become a primary indicator of source and quality. (*Id.* at ¶¶ 27, 71.) For years, the Juvéderm® syringe has stood out in the market—until Galderma decided to copy it with a substantially similar product design. (*Id.* at ¶ 2.)

When Allergan first launched its distinctive product design, Galderma continued to sell its competing Restylane® dermal fillers in a syringe that was dissimilar to Juvéderm®'s novel syringe design. (*Id.* at ¶¶ 4, 54.) If anything, Galderma's syringe resembled the conventional syringes that others, including Allergan, had used before Allergan's redesign. (*Id.* at ¶ 28.)

Then Galderma changed course. Years after Allergan launched its novel, next-generation syringe, Galderma abandoned its own syringe presentation. (*Id.* at ¶ 56.) In February 2026, it announced regulatory approval of a "new state-of-the-art Restylane® syringe." (*See, e.g.*, *id.* at ¶ 59.) That new syringe takes the very features that define Allergan's patented design, such as: "the distinctive visual curvatures and sculptural silhouette of the finger flanges, the smooth

contoured profile of the barrel, the stylized shape of the plunger head, and the overall aesthetic impression created by the combination of these elements." (*Id.* at ¶¶ 30, 56.) Galderma went ahead anyway, without a license, and has obtained FDA approval and undertaken significant plans to launch its copycat syringe in the United States. (*Id.* at ¶¶ 58-67.)

As alleged in the complaint, Galderma was aware of Allergan's updated syringe design and intellectual property during this time. (*See* D.I. 1 at ¶¶ 56-58.) The Asserted Design Patents issued in November 2019, and Allergan's patent-notice webpage marks every one of them as protecting Juvéderm®. (D.I. 1 at ¶¶ 32, 56, 58.) Further evidencing that Galderma has traced Allergan's novel designs, Galderma submitted documents to the government in February 2023 citing three Asserted Design Patents. (*Id.* at ¶ 58.) Indeed, "[a]s a sophisticated, multinational competitor in the same dermal filler market, [Galderma was] at all relevant times aware of, or willfully blind to, the Asserted [Design] Patents." (*Id.*)

Provided below is a summary chart (taken from Galderma's own motion) reflecting the side-by-side comparison conducted in Allergan's complaint.

| | D948 | D949 | D950 | D753 | D582 |
|---|---|---|---|---|---|
| |  Complaint ¶ 76 |  Complaint ¶ 86 |  Complaint ¶ 96 |  Complaint ¶ 106 |  Complaint ¶ 116 |
| **Plunger Head** | X | | X | X | X |
| **Plunger** | X | | X | X | |
| **Finger Flange** | X | X | | X | X |
| **Barrel** | X | | | X | |

(D.I. 31 at 12.)

Galderma does not ask the Court to weigh the allegations patent-by-patent. Instead, it swings for the fences, seeking to dismiss all five counts in one shot. But each Asserted Design Patent claims distinct design features and combinations, and Galderma never explains how its arguments could defeat every one of them. As discussed below, Galderma's arguments fail for multiple independent reasons and run headlong into, or flat out ignore, Federal Circuit precedent. Galderma's all-or-nothing approach fails, and its motion to dismiss should be denied.

## III. APPLICABLE LAW

### A. Rule 12(b)(6) Motions to Dismiss

Under Federal Rule of Civil Procedure 8(a)(2), a pleading need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Rule 8 does not require "detailed factual allegations," but "only enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In the context of a Rule 12(b)(6) motion to dismiss, the Court must accept well-pleaded facts as true and construe the complaint in the light most favorable to the plaintiff. *Gines v. D.R. Horton, Inc.*, 699 F.3d 812, 816 (5th Cir. 2012). Indeed, the Fifth Circuit states that a complaint should not be dismissed "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *See Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000) (internal quotations omitted); *see also Cloud Sys. Holdco IP, LLC v. RGB Sys., Inc.*, 2026 WL 2906381, at *3 (N.D. Tex. Sept. 28, 2026) (Scholer, J.). Thus, the question before the Court on this motion is "whether in the light most favorable to the plaintiff and with every doubt resolved in his behalf, the complaint states any valid claim for relief." *Collins*, 224 F.3d at 498. As such, motions to dismiss are generally "viewed with disfavor and [are] rarely granted." *Id.*

**B. Design Patents**

This is a design patent infringement case asserted under the Patent Act. Recognizing the value and protectability of intellectual property associated with novel product designs, Congress has conferred statutory rights for inventors to pursue design patents protecting "any new, original and ornamental design for an article of manufacture." 35 U.S.C. § 171(a). "A patentable design gives a peculiar or distinctive appearance to the manufacture, or article to which it may be applied, or to which it gives form." *Samsung Elecs. Co., Ltd. v. Apple Inc.*, 580 U.S. 53, 56 (2016) (internal quotations omitted). Put simply, design patents are a significant form of intellectual property, the infringement of which may be addressed, for example, through the statutory remedy of profit disgorgement. *See id.*; 35 U.S.C. § 289 (explaining that the infringer "shall be liable to the owner to the extent of his total profit").

The fundamental infringement question in a design patent case is a highly fact-specific inquiry referred to as the "ordinary observer" test. *Columbia Sportswear N. Am., Inc. v. Seirus Innovative Accessories, Inc.*, 942 F.3d 1119, 1129 (Fed. Cir. 2019) ("design patent infringement is a question of fact"). As stated in the Supreme Court's *Samsung v. Apple* decision, "a design patent is infringed if, in the eye of an ordinary observer, giving such attention as a purchaser usually gives, two designs are *substantially the same*." 580 U.S. at 56 (emphasis added) (internal quotations omitted). The Federal Circuit has further explained that the "ordinary observer" test requires "the fact finder to compare similarities in overall designs, not similarities of ornamental features in isolation." *Range of Motion Prods., LLC v. Armaid Co. Inc.*, 166 F.4th 981, 991 (Fed. Cir. 2026) (cleaned up). As such, the Federal Circuit has repeatedly warned that "minor differences between a patented design and an accused article's design, cannot, and shall not, prevent a finding of infringement." *Crocs, Inc. v. Int'l Trade Comm'n*, 598 F.3d 1294, 1303 (Fed. Cir. 2010) (cleaned up); *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 678 (Fed. Cir.

2008); *see also Converse Inc. v. Steve Madden, Ltd.*, 552 F. Supp. 3d 139, 141 (D. Mass. 2021) ("That the designs are not identical is not . . . dispositive . . . because a finding of infringement requires only that the accused design and the patented design be 'substantially the same.'").

As part of analyzing the merits of infringement, there is often a multi-factor assessment of whether aspects of the claimed design, if any, are functional as opposed to ornamental. *See PHG Techs., LLC v. St. John Cos., Inc.*, 469 F.3d 1361, 1366 (Fed. Cir. 2006); *Ethicon Endo-Surgery, Inc. v. Covidien, Inc.*, 796 F.3d 1312, 1330 (Fed. Cir. 2015). Moreover, an accused infringer seeking to invalidate a design patent on the basis of functionality bears a burden to prove by clear and convincing evidence that the claimed design is "solely" functional. *See, e.g.*, *Rosco, Inc. v. Mirror Lite Co.*, 304 F.3d 1373, 1378 (Fed. Cir. 2002). Yet importantly, it is axiomatic that "the design claim is not invalid, even if certain elements have functional purposes." *See, e.g.*, *Ethicon*, 796 F.3d at 1333.

Given the factual nature of the ordinary observer test, courts regularly deny Rule 12(b)(6) motions to dismiss in design patent disputes. (*See infra* Section IV.B.) *See, e.g.*, *Hall v. Bed Bath & Beyond, Inc.*, 705 F.3d 1357, 1364 (Fed. Cir. 2013) (reversing district court's grant of motion to dismiss); *Jenny Yoo Collection, Inc. v. Watters Designs, Inc.*, 2018 WL 3330025, at *4 (N.D. Tex. June 6, 2018) (denying Rule 12(b)(6) motion to dismiss design patent complaint); *Mobile Pixels, Inc. v. P'ships & Unincorporated Assocs. Identified on Schedule "A"*, 2024 WL 3461402, at *2 (D. Mass. July 24, 2024) (same); *Converse*, 552 F. Supp. 3d at 141 (same); *Prestige Flag Mfg. Co. Inc. v. Golf Sol. I, LLC*, 2018 WL 9651792, at *2 (W.D. Wis. June 28, 2018) (same).

## IV. <u>ARGUMENT</u>

The Court should deny Galderma's motion, which is fatally flawed for at least four reasons. *First*, Allergan's complaint is more than sufficient to plausibly state a claim for

infringement of the Asserted Design Patents, and the motion fails on any one of five independent grounds. (*See infra* Section IV.A.) *Second*, each of the Rule 12(b)(6) cases on which Galderma relies is inapposite, and courts routinely decline to resolve the fact-intensive ordinary observer inquiry on a motion to dismiss. (*See infra* Section IV.B.) *Third*, Galderma's "striking differences" arguments are incorrect, reveal core factual disputes, and reemphasize that Allergan has plausibly alleged the claimed design and accused product are substantially similar. (*See infra* Section IV.C.) *Fourth*, Galderma's reliance on its own later-filed design patent is irrelevant to whether Allergan has plausibly alleged Galderma infringes the Asserted Design Patents. (*See infra* Section IV.D.)

### A. Allergan's Complaint Is More Than Sufficient to Plausibly State a Claim for Infringement of the Asserted Design Patents

Allergan's complaint readily clears the Rule 8 bar, and Galderma's motion should be denied on five independent bases: (1) Allergan pled every required element; (2) functionality cannot be litigated on the pleadings; (3) no ornamental-feature explanation is required; (4) Galderma improperly relies on extrinsic evidence; and (5) Galderma's accusation that Allergan modified its cited image of the new Restylane® syringe is false.

#### 1. Independent Basis #1: Allergan Indisputably Pled the Five Elements of a Design Patent Infringement Claim

Governing Federal Circuit precedent holds that five straightforward elements must be satisfied for a plaintiff to meet Rule 8(a)(2) requirements in a patent infringement case: "(i) allege ownership of the patent, (ii) name each defendant, (iii) cite the patent that is allegedly infringed, (iv) state the means by which the defendant allegedly infringes, and (v) point to the sections of the patent law invoked." *Hall*, 705 F.3d at 1362 (outlining pleading requirements in design patent context); *see, e.g.*, *Jenny Yoo Collection*, 2018 WL 3330025 at *4

(denying Rule 12(b)(6) motion to dismiss design patent complaint where all five elements were pled).

On the first element, Plaintiff Allergan, Inc. owns the five design patents as alleged. (*See* D.I. 1 at ¶¶ 35, 39, 43, 47, 51.) Next, the four Galderma codefendants—Galderma Group AG, Galderma S.A., Galderma Laboratories, L.P., and Q-Med AB—are expressly named with tailored allegations identifying their infringing conduct on a defendant-by-defendant basis. (*Id.* at ¶¶ 10-15, 21-22, 63-70.) Third, the five asserted design patents are cited. (*Id.* at ¶¶ 7, 33-52.) Fourth, the means by which the defendants infringe the asserted design patents are alleged in detail, including through one-to-one comparisons between the claimed designs and accused product (*id.* at ¶¶ 76, 86, 96, 106, 116) as well as specific allegations of infringing uses, commercial stockpiling, sales, offers for sale, and importation (*id.* at ¶¶ 63-70). Finally, the complaint expressly invokes § 271 of the Patent Act (35 U.S.C.) to allege that Galderma directly and indirectly has and/or will infringe the asserted patents, § 289 in support of Allergan's demand that it be awarded the statutory remedy of profit disgorgement, and §§ 284 and 285 to obtain further relief for Galderma's conduct, including enhanced damages for willful infringement, attorney fees, and costs. (*Id.* at ¶¶ 74-123 (Counts I-V).)

The complaint therefore indisputably satisfies each of the five elements. And Galderma "never state[s] that [it was] not apprised of [Allergan's] infringement claim and its grounds." *Hall*, 705 F.3d at 1362. Indeed, even the summary comparison chart in Galderma's brief (D.I. 31 at 12) proves that Galderma is on notice of Allergan's infringement allegations.

In addition, the allegations in Allergan's complaint go beyond the baseline pleading requirements of a design patent infringement claim. Throughout its pleading, Allergan provides a detailed description of the development project leading to Allergan's novel syringe designs

(D.I. 1 at ¶¶ 23-31) as well as specific allegations concerning Galderma's concerted effort to copy Allergan's proprietary designs with full knowledge of Allergan's intellectual property (*id.* at ¶¶ 53-58), pursuit of regulatory approval and infringing importations (*id.* at ¶¶ 59-61, 66), and commercial activities to distribute the infringing product within the United States (*id.* at ¶¶ 63-70). Furthermore, Allergan specifically alleges that "the visual appearance and design of a syringe serve as a primary indicator of product source and authenticity," and that the accused product's "near-identical appearance to the patented Juvéderm® syringe design is likely to cause injectors and patients to mistakenly associate [Galderma's] products with Allergan, to believe the products share a common origin, or to assume that the [accused product] is an authorized version of the Juvéderm® syringe." (*Id.* at ¶¶ 71-72.) Each of the Counts further alleges that the accused product "is substantially similar in its overall visual impression" to the Asserted Design Patents, such that an ordinary observer "would be deceived," and that "[a]ny differences between the [accused product] and the claimed design are minor and do not alter the substantially similar overall appearance." (*See id.* at ¶¶ 76, 86, 96, 106, 116.)

At bottom, Allergan's detailed complaint satisfies the applicable pleading requirements and is specifically tailored to Federal Circuit precedent concerning the fact-intensive "ordinary observer" test—all leading to the conclusion that Allergan's complaint states a plausible claim for relief. *See Crocs*, 598 F.3d at 1303 (stating that design patent infringement occurs "when an ordinary observer, familiar with the prior art designs, would be deceived into believing that the accused product is the same as the patented design").

**2. Independent Basis #2: Galderma Improperly Seeks to Litigate Stringent "Functionality" Merits on the Pleadings**

Whether specific aspects of a claimed design are ornamental versus functional is often a key contested merits issue in a design patent case, which cannot be litigated on a Rule 12(b)(6)

motion to dismiss. *See Nalco Co. v. Chem-Mod, LLC*, 883 F.3d 1337, 1350 (Fed. Cir. 2018) (stating that the "purpose of a motion to dismiss is to *test the sufficiency of the complaint, not to decide the merits*") (emphasis in original); *see also Fecon, Inc. v. King Kong Tools, LLC*, 2017 WL 4869000 (S.D. Ohio June 27, 2017) (denying motion to dismiss design patent case because determination of whether "claimed design is primarily functional . . . is not appropriate for a motion to dismiss"). And the Federal Circuit has emphasized that assessing the merits of a "functionality" defense in a design patent involves a "stringent" standard. *See Ethicon*, 796 F.3d at 1328. Indeed, the Federal Circuit has enumerated a list of several factors to be considered when deciding whether a patented design is dictated solely by the function of the article of manufacture:

> whether the protected design represents the best design; whether alternative designs would adversely affect the utility of the specified article; whether there are any concomitant utility patents; whether the advertising touts particular features of the design as having specific utility; and whether there are any elements in the design or an overall appearance clearly not dictated by function.

*PHG Techs.*, 469 F.3d at 1366.

Galderma never attempts to delve into a full analysis of the *PHG* factors to determine what portions, if any, of the claimed design are functional. And even if it did, such an analysis would be improper on a Rule 12(b)(6) motion. *See, e.g.*, *Fecon*, 2017 WL 4869000, at *4. Rather, Galderma merely asserts—and asks the Court to accept as true—that Allergan's novel design includes "nothing more than . . . functional component[s] common to syringes."[3] (D.I. 31 at 12.) Galderma's approach flips the *Twombly/Iqbal* standard on its head.

[3] Galderma's position on the functional-vs.-ornamental aspects of a syringe is contradictory. On the one hand, Galderma argues Allergan's patented syringe design is functional, while on the other, Galderma cites extrinsic evidence of its own design patent. Leaving aside that Galderma's design patent is narrowly focused on one portion of a syringe, Galderma frames its own design patent as "ornamental." (D.I. 31 at 3.) In so doing, Galderma admits that features of a syringe

Compounding the issue, Galderma states that "'[d]ifferentiating between the functional and ornamental aspects' of the design is part of [the] claim-construction inquiry." (D.I. 31 at 9.) By its own terms, therefore, Galderma seeks to improperly litigate the merits of a purported claim construction issue on the pleadings. *See, e.g.*, *Hall*, 705 F.3d at 1362 (stating that "claim construction is not an essential element of a patent infringement complaint"); *Cloud Sys. Holdco IP*, 2026 WL 2906381, at *3 (stating the "Federal Circuit has expressly cautioned that 'some case-specific circumstances can make it improper for a district court to resolve a claim construction dispute in the context of adjudicating a Rule 12(b)(6) motion'"); *Jenny Yoo Collection*, 2018 WL 3330025 at *6; *Flipsi, Ltd. v. Tomy Int'l, Inc.*, 2023 WL 4930350, at *2 (N.D. Ill. Aug. 2, 2023) (denying a motion to dismiss because patent claims had not yet been construed).

#### 3. Independent Basis #3: Galderma's Demand for an Ornamental Feature Explanation Is Contrary to Federal Circuit Precedent

Galderma spends multiple paragraphs criticizing Allergan's allegations in Paragraph 30, claiming dismissal is warranted because the complaint "does not identify the ornamental features." (*See* D.I. 31 at 13-14.) Galderma's assertion, however, does not comport with the law. And even if it did, Allergan's complaint is more than sufficient.

*First*, Galderma demands that the complaint provide specificity for the ornamental nature of the claimed designs. (*See* D.I. 31 at 13-14.) But the case law is clear that no such requirement exists. In *Hall v. Bed Bath & Beyond*, for example, the Federal Circuit reversed dismissal of design patent infringement counts because, *inter alia*, the district court improperly "require[d] that the complaint identify 'new, original, and ornamental' aspects of the design." 705 F.3d at

---

may be ornamental.

1363. Likewise, in *Jenny Yoo Collection*, former Chief Judge Lynn emphasized that a plaintiff "need not allege how the design is ornamental." 2018 WL 3330025 at *6.

But *second*, even if such a standard were required, the complaint is more than sufficient with respect to alleging the novel ornamentality of the claimed designs. For example, the complaint includes at least the following allegations, which must be accepted as true:

> **¶ 2**: . . . [Allergan's] sustained investment culminated in the approval and subsequent launch of novel and distinctive product designs that are immediately recognizable to injectors and patients[.]
>
> **¶ 27**: . . . Allergan's investment in a distinctive Juvéderm® syringe design has cultivated strong professional and consumer recognition. The syringe's appearance has become closely identified with Allergan's reputation for safety, quality, and innovation.
>
> **¶ 29**: . . . Following years of product redesign efforts involving dedicated teams of industrial designers, Allergan crafted a syringe with a novel and distinctive visual appearance that unequivocally stands out in the marketplace of dermal fillers. The next-generation syringe design was a first-of-its-kind departure from the conventional, utilitarian syringe presentations that had long characterized the dermal filler industry, and it set a new benchmark for product aesthetics in the injectable aesthetics market.
>
> **¶ 30**: . . . The new, original, and ornamental designs reflected in the Asserted Patents are the result of Allergan's concerted effort to advance the visual appearance and aesthetic impression of the Juvéderm® product in a competitive dermal filler landscape. The ornamental features claimed in the Asserted Patents—including, for example, the distinctive visual curvatures and sculptural silhouette of the finger flanges, the smooth contoured profile of the barrel, the stylized shape of the plunger head, and the overall aesthetic impression created by the combination of these elements—represent particular ornamental design choices selected from among numerous available alternatives, none of which is dictated by the functional requirements of a dermal filler syringe.

These descriptions of Allergan's novel syringe design are more than enough to meet the pleading standard. *See, e.g.*, *Jenny Yoo Collection*, 2018 WL 3330025 at *6 (denying motion to dismiss

and recognizing that plaintiff had alleged the scope of the claimed design to include "the two front and two rear panels attached at the waist in a manner that allows them to seamlessly blend into the bottom of the dress").

### 4. Independent Basis #4: Galderma Relies on Extrinsic Evidence

In deciding a Rule 12(b)(6) motion to dismiss, the Fifth Circuit states that the "district court must limit itself to the contents of the pleadings." *See Collins*, 224 F.3d at 498. Extrinsic documents beyond the four corners of the pleading cannot be considered under Fifth Circuit precedent, absent a showing that (1) the document is cited in the defendant's motion to dismiss, (2) the document is referred to in the complaint, *and* (3) the document is central to the plaintiff's claims. *See In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007).

Here, Galderma relies on extrinsic information to support its motion to dismiss, namely Exhibits 1-4 of D.I. 32. Galderma insists that the Court may consider documents outside of the pleadings "if they are integral to the plaintiff's claims and their authenticity is not disputed." (*See* D.I. 31 at 7-8.) The basis for Galderma's assertion, however, is the nonprecedential decision in *Anderson v. Kimberly-Clark Corp.*, 570 F. App'x 927, 931 (Fed. Cir. 2014), which was applying Ninth Circuit law, not the law of the Fifth Circuit. Under Fifth Circuit precedent, the Court should reject Galderma's extrinsic exhibits because Galderma has not carried its burden to show Exhibits 1-4 are cited in Allergan's complaint or central to Allergan's infringement claims. But even if the Court were to consider extrinsic information, none of the exhibits—or the propositions they are meant to support—aids Galderma's motion.

Exhibit 1 purports to be additional photographs of the accused product.[4] Galderma appears to rely on these photographs to argue that additional "views of the side, top, bottom, or

---

[4] After Galderma filed its motion to dismiss with Exhibit 1, Plaintiffs' counsel requested that Galderma provide "at least three physical samples of the syringe reflected in these

rear of Galderma's syringe" are needed to assess infringement. (*See* D.I. 31 at 14-15.) Leaving aside that this further shows Galderma attempts to litigate the merits of the "ordinary observer" infringement test—a highly factual inquiry—on a motion to dismiss, Galderma cites no case law holding that a design patent plaintiff must include images and an analysis of every angle of the accused product. Nor can it. All that is required at the pleading stage is notice of the allegedly infringing conduct (*e.g.*, a side-by-side comparison of the design patent and the accused product), which Allergan has indisputably provided here. *See, e.g.*, *Hall*, 705 F.3d at 1362; *simplehuman LLC v. iTouchless Housewares & Prods., Inc.*, 2019 WL 5963245, at *3 (N.D. Cal. Nov. 13, 2019) (in denying motion to dismiss design patent complaint, rejecting defendant's argument that a complaint must include images from all angles and explaining that "the Court found no cases requiring a specific number of views").

Exhibit 2 purports to be a separate Galderma design patent that was filed with the Patent Office around June 2021, more than four years *after* Allergan filed its application leading to the Asserted Design Patents. As discussed further in Section IV.D, Galderma's separate design patent is irrelevant to this Rule 12(b)(6) motion to dismiss. Nevertheless, in discussing its later-filed design patent, Galderma admits that it was aware of Allergan's patents before it pursued the next-generation Restylane® syringe. If anything, Exhibit 2 supports Allergan's case

---

photographs." (*See* Ex. A.) Galderma rejected that request, sought irrelevant information concerning Allergan's privileged and work-product analysis before filing this case, and did not deny that the syringe from its Instagram announcement videos reflect the syringe for which it obtained FDA approval. (*Id.*) *See, e.g.*, *Intamin Ltd. v. Magnetar Techs., Corp.*, 483 F.3d 1328, 1338 (Fed. Cir. 2007) (explaining there is no "blanket rule that a patentee must obtain and thoroughly deconstruct a sample of a defendant's product" before filing a complaint). At bottom, Galderma's request that the Court reach the merits of infringement based on extrinsic product photographs—while at the same time making false accusations about product images taken from Galderma's Instagram announcements included within the four corners of the complaint—should be rejected.

that Galderma's "infringement of the Asserted [Design] Patents has been undertaken with specific knowledge of Allergan's proprietary designs," and that it "undertook a concerted effort to copy the proprietary Juvéderm® design." (D.I. 1 at ¶¶ 56, 58.) This admission also supports Allergan's claim that Galderma is liable for willful infringement and should be ordered to pay enhanced damages as applicable. (*See, e.g.*, D.I. 1 at ¶¶ 58, 83, 93, 103, 113, 123.)

Exhibit 3 is an Allergan utility patent that is not cited in the complaint: U.S. Patent No. 11,890,457. Here, Galderma points to this patent to suggest that the mere existence of a separate utility patent necessarily renders the Asserted Design Patents solely functional. (*See* D.I. 31 at 6-7.) Numerous cases, however, show that Galderma is incorrect on the law. *See, e.g.*, *PHG Techs.*, 469 F.3d at 1366 (stating that "any concomitant utility patents" are merely a factor to consider in the functionality analysis, not a determinative factor); *see also Ethicon*, 796 F.3d at 1332 (explaining that the district court erred in finding utility patent application significant because court's analysis failed to consider "the specifically claimed design conceptions of those [functional] elements"). If anything, Galderma's reliance on a concomitant utility patent emphasizes that Galderma seeks a shortcut through a complex fact-specific analysis based on multiple factors and considerations—all of which is outside of Allergan's pleading. Moreover, because the functionality issue goes to Galderma's apparent validity defense, *see Ethicon*, 796 F.3d at 1328, the Allergan utility patent is not central to Allergan's infringement claims and should be excluded from the motion to dismiss analysis under Fifth Circuit precedent, *see In re Katrina Canal Breaches Litig.*, 495 F.3d at 205.

Exhibit 4 purports to be "[t]wo screenshots from a video" sourced online from a third party to this litigation, RKS Design. Galderma relies on this information for the sole proposition that the barrel of the redesigned Juvéderm® was not changed from prior versions. (*See* D.I. 31 at

6.) If the point Galderma seeks to make is that the barrel portion of the Asserted Design Patents is not worthy of design patent protection, then Galderma will have an opportunity to raise such arguments later in the case, including during expert discovery. But such a merits dispute regarding the validity of the Asserted Design Patents is premature. *See, e.g.*, *Design Ideas, Ltd. v. Lowe's Home Ctrs. LLC*, 2021 WL 5611319, at *10-11 (C.D. Ill. Nov. 30, 2021) (holding that Defendant's validity challenge of design patent on motion to dismiss was premature, declining to take judicial notice of prior art design patents, and explaining that plaintiff is "not required to 'plead around' affirmative defenses"); *Magnolia & Vine Inc. v. Tapestry, Inc.*, 2018 WL 2208316, at *3 (D. Minn. May 14, 2018) (declining to decide motion to dismiss design patent complaint on issues of validity). And it is certainly not a basis to dismiss the entirety of Allergan's complaint on all five Asserted Design Patents, as Galderma admits that the D949, D950, and D582 patents do not implicate the barrel at all. (*See* D.I. 31 at 5, 12.) Extrinsic Exhibit 4 should also be excluded because it was not cited in the complaint and concerns a purported defense Galderma may raise in the case, not Allergan's affirmative claim of design patent infringement. *See Ethicon*, 796 F.3d at 1328; *In re Katrina Canal Breaches Litig.*, 495 F.3d at 205.

The Court should disregard these extrinsic exhibits. In so doing, the motion should be denied given Galderma's reliance on this extrinsic information across all of its arguments.

#### 5. Independent Basis #5: Galderma Falsely Accuses Allergan of Modifying a Restylane® Product Image

Galderma asserts that the image used in Allergan's complaint is "modified" and "does not accurately depict the Accused Syringe Design." This accusation is patently untrue. As Galderma's false statement is a pillar of its motion to dismiss, this alone warrants denial.

The accused product image in Allergan's complaint comes directly from Galderma's Instagram announcement videos concerning the approval of its next-generation Restylane® syringe. As shown in the side-by-side image below, Allergan has not manipulated the image of the accused product in any way. The image is *from Galderma.* It is inappropriate for Galderma's counsel to state, for example, that "the barrel appears blue in the Complaint, calling into question whether the image accurately depicts the accused product," while at the same time having access to publicly available announcement videos and express citations of relevant Instagram videos in the pleading (D.I. 1 at ¶¶ 59, 62) identifying the exact product in the Allergan complaint.[5] *Cf. Espinoza v. Garza*, 2020 WL 2310022, at *7 n.5 (S.D. Tex. Apr. 6, 2020) (cautioning defendant about misrepresentations made about plaintiff's complaint and that such arguments "may subject defense counsel to sanctions").

<table>
<tr><th>Image from Complaint<br>(See, e.g., D.I. 1 at ¶ 5.)</th><th>Exemplary Image from<br>Galderma's Public Announcement Videos<br>(See D.I. 1 at ¶¶ 59, 62.)</th></tr>
<tr><td>
</td><td>
</td></tr>
</table>

[5] Notably, Allergan consented to Galderma's request for a two-month extension to respond to the complaint. (*See* D.I. 12.) If Galderma believed there was an issue with the accused product image in the complaint, there was more than ample time for Galderma to contact Allergan to discuss this issue before lodging false accusations with the Court.

### B. Each of Galderma's Cited Rule 12(b)(6) Cases Is Inapposite and the Law Does Not Support Galderma's Assertion that Design Patent Infringement Complaints Are "Routinely" Dismissed

Notwithstanding the independent bases to deny Galderma's motion, none of the cases Galderma relies on for a preemptive "plainly dissimilar" merits determination supports dismissal.

Galderma fails to address the stark differences between Allergan's complaint and its cited cases. For example, Galderma primarily relies on two nonprecedential Federal Circuit cases involving *pro se* litigants with materially deficient allegations not at issue here. *First*, Galderma cites *Anderson v. Kimberly-Clark*, which involved an appeal of a Rule 12(c) motion for judgment on the pleadings. 570 F. App'x at 929. In that case, the design patentee was a *pro se* litigant who failed to identify the appropriate defendants involved in the alleged infringement and "never explained how or why an ordinary observer would be deceived into thinking that the accused products are the same as the patented design." *Id.* at 928, 933-34. Unlike Allergan's 32-page pleading, the mere five-page *Anderson* complaint did not conduct a comparison between the claimed design and accused product. *Id.* at 932. *Second*, Galderma relies on another nonprecedential Federal Circuit case, *Colida v. Nokia, Inc.*, where the *pro se* litigant had been found to exhibit an "overall pattern of filing meritless suits, heedless of warnings" from courts that resulted in Rule 11 sanctions and an anti-filing injunction. *See* 347 F. App'x 568, 571 (Fed. Cir. 2009). The *pro se* litigant in *Colida* merely alleged that the accused cell phone product "'reproduce[d] the novel distinctive design appearance of the clam-shell design,' but [did] not explain which patents include[d] this design, where it appear[ed] in the accused product, or any other facts relevant to the question of infringement." *Id.* at 570. Once again, Allergan's complaint is much more detailed, including one-to-one comparisons of the asserted and accused designs. (*See, e.g.*, *supra* Section IV.A.1.)

Each of the other cases relied upon by Galderma involves highly fact-specific inquiries, procedural postures, and deficiencies that are not at issue here. *See Performance Designed Prods., LLC v. Mad Catz, Inc.*, 2016 WL 3552063 (S.D. Cal. June 29, 2016) (dismissing a five-page complaint where patentee was unable to "identify a single similarity between the [accused product] and the [asserted design patent] that [was] also not found in the prior art."); *Wine Enthusiast, Inc. v. Vinotemp Int'l Corp.*, 317 F. Supp. 3d 795 (S.D.N.Y. 2018) (case involving declaratory judgment of noninfringement); *Viscosoft, Inc. v. Hangzhou Heliang Network Tech. Co.*, 2026 WL 510573 (W.D.N.C. Feb. 24, 2026) (dismissing complaint because analysis of alleged infringement of (i) patented "dots" design against a "quilted rods or rectangles" pattern and (ii) patented "honeycomb" design against "spaced dots" pattern "very obviously leads to the conclusion that the Plaintiff's claims lack merit—to the point that the Court must seriously consider the imposition of sanctions"); *Wepay Glob. Payments, LLC v. PNC Bank N.A.*, 2022 WL 1782504 (W.D. Pa. June 1, 2022) (dismissing case involving generic smartphone app graphics displays based on geometric shapes that were not present in accused banking app).

Galderma attempts to paint a picture that courts "routinely dismiss design-patent infringement claims where a side-by-side comparison reveals material differences" (D.I. 31 at 16), but the opposite is true: Courts frequently deny such motions, declining to make the findings of fact necessary to determine infringement on the pleadings alone. For example, in *Constructive Eating*, the court declined to dismiss the complaint on the merits:

> [Defendant] asks the Court to consider the exhibits attached to the Motion, which are not part of the Complaint. More importantly, as revealed by the parties' non-infringement and infringement arguments, the infringement determination in this case will be fairly involved, *requiring identifying functional features, claim constructions, identifying differences between the patented designs and [the Defendant's accused product], and applying the ordinary observer test*, all in the face of disputes between the parties. And,

> compounding the issues involved in the infringement determination, there is, simply put, a lot going on in the patented designs . . . . [T]hese issues are more properly addressed on a full record at later stages of this case.

*Constructive Eating, Inc. v. Masontops, Inc.*, 2021 WL 719701, at *13 (E.D. Mich. Feb. 23, 2021) (emphasis added); *see, e.g.*, *Flipsi, Ltd.*, 2023 WL 4930350 at *2 (denying motion to dismiss given no construction of patent); *Magnolia & Vine Inc.*, 2018 WL 2208316 at *3 (declining to engage in assessing functionality of claimed design at motion to dismiss stage); *Mobile Pixels, Inc.*, 2024 WL 3461402 at *2 (denying motion to dismiss because "the Court ha[d] not engaged in claim construction or considered the range of prior art"); *Kao v. Hengda Kite*, 2026 WL 1475186, at *1 (N.D. Ill. May 26, 2026) (declining to dismiss complaint despite some design differences because "[w]hether the differences that Defendant identifies will ultimately carry the day to defeat a finding of infringement is an analysis that is more appropriate for summary judgment, not a motion to dismiss").

Courts have also denied motions to dismiss design patent infringement claims at the pleading stage when there are noticeable differences between the claimed design and accused product, but it was nonetheless "not implausible" that an ordinary observer would confuse them. For example, in *Pickuls Gizmo*, the court declined to dismiss a complaint alleging infringement of a design patent covering a tool to guide hair clippers. *Pickuls Gizmo Ltd. v. P'ships & Unincorporated Assocs. Identified in Schedule "A"*, 2026 WL 926401, at *3 (N.D. Ill. Apr. 6, 2026). Despite acknowledging that the handle portion of the design patent and accused product had different cutouts, texture, and size, the court stated that "these differences in isolation do not make the overall design so plainly dissimilar that it is implausible an ordinary observer would confuse them." *Id.*; *see also, e.g.*, *Midwest Goods Inc. v. Breeze Smoke LLC*, 2024 WL 2785066, at *5 (N.D. Ill. May 30, 2024) (denying motion to dismiss because defendant's arguments

"implicitly concede that there are similarities between the claimed and accused designs" which is "sufficient to plausibly state a claim for infringement" and should be considered "on summary judgment after discovery, with the benefit of expert testimony"); *simplehuman LLC*, 2019 WL 5963245 at *5 (denying motion to dismiss despite acknowledging differences in claimed and accused designs).

### C. Galderma's Alleged "Striking Differences" Between the Patented and Accused Designs Reveal Core Factual Disputes Not Appropriate for a Motion to Dismiss

Even if the Court considers the merits of Galderma's motion, the alleged "striking differences" between the patented and accused designs only underscore the impropriety of adjudicating this case on a motion to dismiss. For example, one of the purported "striking differences" is that the front of the "finger flange of Galderma's Accused Syringe is an X shape, whereas Plaintiffs' design has a V shape." (*See* D.I. 31 at 20-21.) Putting aside the fact that Galderma's framing of the ordinary observer test is based on attorney argument (not any expert declaration, survey, or the like), even a cursory assessment of the claimed design against the accused product shows they are not "strikingly different"—particularly in view of the leap forward Allergan made over older syringe designs. For example, both flange extenders incorporate a distinctive "V-shape curvature" (annotated in red) and "feet" (annotated in blue), neither of which is reflected in the prior art:

| **Old Style Dermal Filler Syringes** (*See* D.I. 1 at ¶¶ 28, 54) | | **Patented Design** (*See* D949 Patent) | **Accused Product** (*See* D.I. 1 at ¶ 62; D.I. 32, Ex. 1) |
|---|---|---|---|
|  |  |  |  |

These core factual questions should be litigated through fact discovery, experts, and trial. At a minimum, the comparison of the patented design and accused product shows that Allergan has plausibly alleged infringement based on substantial similarity. *See Columbia Sportswear N. Am.*, 942 F.3d at 1129 ("[D]esign patent infringement is a question of fact.").

**D. Galderma's Reliance on Its Later-Filed Design Patent Is Irrelevant**

Galderma suggests that, because the Patent Office granted a design patent to Galderma after listing three of the Asserted Design Patents as references, Galderma's accused syringe cannot be "substantially the same" as Allergan's designs as a matter of law. (D.I. 31 at 3-4; D.I. 32, Ex. 2.) Tellingly, Galderma raises this point only in passing in its background section and does not develop that theory into an argument for dismissal. For good reason—it is irrelevant. The Federal Circuit's decision in *Shenzhen Jisu Tech. Co. v. Entities & Individuals Identified in Annex A*, 2026 WL 2108668 (Fed. Cir. 2026), is nonprecedential and, if anything, merely suggested that a district court considering a preliminary injunction may take into consideration a defendant's patent portfolio. The nonprecedential *Shenzhen* case, however, did not overturn (and Galderma does not claim it did) black-letter law that "the existence of one's own patent does not constitute a defense to infringement of someone else's patent." *Bio-Technology General Corp. v. Genentech, Inc.*, 80 F.3d 1553, 1559 (Fed. Cir. 1996); *see also Gaiatop LLC v. Shenzhen Jisu Keji Youxiangongsi*, 2025 WL 2412717, at *4-5 (D.N.J. Aug. 20, 2025) (rejecting theory that later-filed design patent was relevant to assessment of design patent at issue because, *inter alia*, "the Patent Office is not the final arbiter of whether or not a patent infringes another" and "has no concern with the scope of the claim of the first," "unlike when a patent issue is brought before a court for decision") (quoting *Atlas Powder Co. v. E.I. du Pont De Nemours & Co.*, 750 F.2d 1569, 1580-81 (Fed. Cir. 1984)).

Even if the Court were to consider the substance of Galderma's 2021 design patent, it is important to note that the *scope* of Galderma's design patent appears to be very narrowly focused on just one part of the plunger rod and the underside of the plunger head, as reflected in the difference between solid and broken lines in the patent. (D.I. 32, Ex. 2 ("The broken lines of equal length dashes in the drawings illustrate portions of the syringe and form no part of the claimed design. The break lines having a jagged element indicate that the appearance of any portion of the syringe immediately outside of the break lines forms no part of the claimed design.").) As such, the Galderma design patent says nothing, for example, about the complete finger flange as claimed in the Asserted Design Patents. *See, e.g.*, *Contessa Food Prods., Inc. v. Conagra, Inc.*, 282 F.3d 1370, 1378 (Fed. Cir. 2002) ("If features appearing in the figures are not desired to be claimed, the patentee is permitted to show the features in broken lines to exclude those features from the claimed design, and the failure to do so signals inclusion of the features in the claimed design.").

Finally, even if Galderma's design patent mattered to this motion, Galderma identifies only three of the five Asserted Design Patents (the D949, D753, and D582 patents) as references the Patent Office considered. (D.I. 31 at 4.) It therefore offers no basis to dismiss the counts on the D948 and D950 patents.

## V. AT A MINIMUM, ALLERGAN SHOULD BE GRANTED LEAVE TO AMEND

Even if the Court were to find that Allergan's complaint fails to state any valid claim for relief, Allergan should be granted leave to amend to cure any deficiencies under Rule 15(a)(2).

For example, if the Court dismisses Allergan's complaint on the basis of alleged "plain dissimilarity," functionality, lack of ornamental pleading, or the relevance of Galderma's later-filed patent for which Galderma seeks dismissal, then Allergan will file an amended pleading addressing each issue serving as the basis of such dismissal with specific allegations. *See Peña*

*v. City of Rio Grande City*, 879 F.3d 613, 617-18 (5th Cir. 2018) (stating that district court erred in denying plaintiff's motion for leave to amend, as Fifth Circuit "does not require a complicated motion to amend, but only that 'the party requesting amendment' 'set forth with particularity the ground for the amendment and the relief sought'"); Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave when justice so requires."); *see also Hung v. Lowe's Home Ctrs.*, 2019 WL 4149361, at *4-5 (C.D. Cal. May 1, 2019) (in case cited by Galderma, court found plaintiff's complaint "[fell] woefully short of the standard" because it attached only a few poor quality photographs, but nevertheless permitted plaintiff to amend and address deficiencies). Granting leave to amend on any of these issues would not be futile, particularly given that Galderma has introduced these merits concepts through extrinsic exhibits to its motion.

While Allergan maintains that the original complaint is more than sufficient for all of the reasons discussed herein, Allergan respectfully requests that the Court grant leave to amend as needed to allow it to cure any deficiencies.

## VI. CONCLUSION

Allergan invested years and millions of dollars to create its market-leading dermal filler. In so doing, Allergan secured five design patents protecting its novel syringe design, which Galderma has infringed. Galderma seeks to escape the consequences of its copying by asking the Court to resolve fact-intensive merits disputes on the pleadings, contrary to the *Twombly/Iqbal* standard. For the reasons stated above, Allergan respectfully requests that the Court deny the Rule 12(b)(6) motion to dismiss.

PAUL HASTINGS LLP

*/s/ Stephanie Clouston*

Stephanie Clouston
TX Bar No. 24002688
Angie Romero
TX Bar No. 24126012
PAUL HASTINGS LLP
2001 Ross Avenue, Suite 2700
Dallas, TX 75201
stephanieclouston@paulhastings.com
angiegarcia@paulhastings.com

*Attorneys for Plaintiffs*
*Allergan, Inc. and AbbVie Inc.*

*Of Counsel*:

Eric W. Dittmann
Carl J. Minniti III
Gabrielle Landes
Sydney Bruns
PAUL HASTINGS LLP
200 Park Avenue
New York, New York 10166
(212) 318-6000

Robert Unikel
PAUL HASTINGS LLP
71 South Wacker Drive, Suite 4500
Chicago, IL 60606
(312) 499-6000

Dated: October 30, 2026